UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD LECH,

Plaintiff,

v.

GINA GETTEL, W. MARK FONDREN,
INTOXIMETERS, INC., JOHN DOE 1, JOHN
DOE 2, and JOHN DOE 3,

Defendants.

_____/

Case No. 22-cv-11197

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING DEFENDANT INTOXIMETERS, INC.'S MOTION TO STAY (ECF No. 14) AND ADMINISTRATIVELY CLOSING CASE

### I. INTRODUCTION

On June 1, 2022 Plaintiff Ronald Lech initiated the instant civil rights action against Defendants Gina Gettel, Perry Curtis,[1] W. Mark Fondren, Intoximeters, Inc. (erroneously sued as "Inotimeters, Inc.;" hereinafter "Intoximeters"), and three John Does. Presently before the Court is Defendant Intoximeters Motion to Stay pending

---

[1] On August 15, 2022, this Court entered a stipulated order dismissing Defendant Curtis from the case with prejudice. ECF No. 20.

1

the outcome of the Sixth Circuit appeals in *Miller v. Gettel*, Nos. 22-1034 and 22-1046.    ECF No. 14.    Defendants Gettel and Fondren (collectively the "MSP Defendants") filed a notice of joinder in the motion.    ECF No. 16.    Plaintiff filed a response in opposition, ECF No. 19, and Intoximeters replied, ECF No. 21.    The Court held a hearing on the motion on December 21, 2022.    For the following reasons, the Court will **GRANT** Defendant Intoximeters' Motion to Stay (ECF No. 14).

## II.    BACKGROUND

### A. Factual Background

Plaintiff concedes that "the complaint filed here is nearly identical to the complaint filed in the *Miller* action in this Court (Case No. 2:21-cv-10175-GAD-KGA)."    ECF No. 19, PageID.136.    Therefore, the Court incorporates the relevant portions of its statement of the facts from its December 16, 2021 Opinion and Order below.

### 1.  Michigan State Police's History with DataMaster DMT

The DataMaster DMT is an infrared evidential breath alcohol test instrument.    ECF No. 1, PageID.6.    Since at least 2011, Michigan prosecutors have used DataMaster DMT results as the main piece of evidence to prove guilt for operating a motor vehicle while intoxicated ("OWI") charges.    *Id*.
Defendant Sergeant Curtis oversaw the Michigan State Police ("MSP") Breath Alcohol Program and evaluated the DataMaster DMT for use in

2

the State of Michigan prior to his retirement from the MSP in 2018. *Id.* at PageID.3.

On September 1, 2018, the State of Michigan entered a three-year contract with Defendant Intoximeters that included regular maintenance and certification of the DataMaster DMTs ("Service Contract"). *Id.* at PageID.6. Defendant Sergeant Gettel, Michigan's Manager for the Breath Alcohol Program, was responsible for monitoring and coordinating the day-to-day activities of the Service Contract. *Id*. Subject to Michigan's (through the MSP's) approval, Intoximeters was required to hire a minimum of three certified DMT service technicians to handle the day-to-day operations of the Service Contract (the Doe Defendants). *Id*. Intoximeters was also required to provide DataMaster DMT training to MSP staff and designate a customer service representative. *Id*.

In January 2019, the MSP began efforts to "bring Michigan's evidentiary breath alcohol testing program into alignment with forensic laboratory standards and work toward national accreditation." *Id.* at PageID.7. The MSP hired Defendant Fondren to fill the newly created Breath Alcohol Technical leader role within the Forensic Science Division. *Id*. In April 2019, the MSP implemented additional workflow requirements for Intoximeters to ensure compliance with state law and administrative rules and move toward accreditation. *Id*. According to the MSP's website, these additional controls enabled the MSP to detect problems with the DataMaster DMTs, such as the fact they were not being maintained or certified by the Doe Defendants. *Id*. At this time, the MSP did not commission an audit of Intoximeters' work. *Id*.

Instead, at the MSP's request, a Senior Relations Analyst from Michigan's Department of Technology, Management and Budget's Central Procurement sent Intoximeters a letter on August 9, 2019 stating, *inter alia*: "Since contract inception, there have been substantial performance issues related to timely certification of Datamaster [*sic*]

3

Instruments and failure of your employees to comply with basic security protocols." *Id.* at PageID.7-8. The letter expressed the MSP's "significant frustration" and warned any of the issues identified in the letter constituted a material breach of contract that could result in termination. *Id.* at PageID.8. These issues included sixty instances of failing to perform certifications, incorrectly recording important elements during instrument checks, and sharing instrument passwords with jail staff. *Id.*

Intoximeters responded with a corrective action plan ("CAP") on August 21, 2019. Gettel and Fondren, among others, decided to accept the CAP and not terminate the contract. *Id.* However, throughout the rest of 2019 and January 2020, the "MSP became aware of repeated instances of unlawful conduct regarding the maintenance and certification of DataMaster DMTs in or by at least seven law enforcement locations." *Id.* This conduct included incomplete documentation on alleged work performed on DataMaster DMTs and failures to identify, address, or fix malfunctions with DataMaster DMTs. *Id.*

After the MSP discovered more false paperwork related to a DataMaster DMT at the Alpena County Sheriff's Department, the MSP issued a stop work order with Intoximeters on January 7, 2020. *Id.* at PageID.10. The MSP issued a statement indicating, *inter alia*, it was investigating potential fraud committed by Intoximeters employees. *Id.* . . . By the time Defendants Fondren and Gettel filed their Motion to Dismiss two of the Doe Defendants had been criminally charged. ECF No. 31, PageID.190. One pleaded guilty and the other's case was pending at the time of filing. *Id.*

*Miller v. Gettel*, 575 F. Supp. 3d 846, 854–55 (E.D. Mich. 2021), *motion to certify appeal granted*, No. 21-CV-10175, 2022 WL 2070384 (E.D. Mich. June 8, 2022).

4

## 2.  Lech's Arrest, Prosecution, and Dismissal

In the evening of March 22, 2019, Plaintiff Lech was operating his vehicle in Beverly Hills, Michigan.  ECF No. 1, PageID.10.  He was pulled over by an officer of the Beverly Hills Police Department for allegedly not having an operable third brake light.  *Id*.  Lech had drunk two beers three to four hours before the stop but had not otherwise consumed alcoholic beverages or intoxicating substances that day. *Id.* at PageID.10–11.  Thus, when asked, Lech told the officer he had not been drinking.  *Id.* at PageID.10.  The officer said he did not smell alcohol but asked Lech to exit the vehicle and administered field sobriety tests.  *Id.* at PageID.11.  A second officer wearing gloves that smelled of rubbing alcohol administered a preliminary breathalyzer test.  *Id*.  After Lech informed the officers that he had a bad cold and dental implant that affected his speech and could not see very well, they told him he had "failed the tests anyway."  *Id*.  He was arrested and taken to the Beverly Hills Police Department where he was given a DataMaster DMT test.  *Id.*  After ten attempts, the DataMaster showed that Lech's BAC was 0.13%, and Lech was jailed overnight.  *Id*.

Lech was criminally charged with OWI, in violation of Mich. Comp. Laws § 257.625(a)(1), on March 25, 2019.  *Id*.  Lech retained a private attorney to represent him and paid over $20,000 in attorney's fees and costs.  *Id*.  Pending the disposition of his case Lech was released on bond with the following conditions: abstaining from

the use of alcohol or drugs, paying costs of approximately $5000 for alcohol testing, and blowing into a Soberlink breathalyzer four times per day for approximately fifteen months.  *Id.* at PageID.11–12.

In January 2020, the MSP Director testified before a state Senate committee that fifty-two drunk driving cases were affected by falsified maintenance or a lack of routine maintenance on the DataMaster breathalyzers.  *Id.* at PageID.12.  These included Lech's case.  *Id.*  On August 5, 2021, a week before the Lech's trial was scheduled to start, the Honorable Michael Warren issued an Order of Dismissal regarding Lech's charges.  *Id.*

### B.  Procedural Background

#### 1.  The Instant Case

Plaintiff alleges that Defendants violated his

due process rights by fabricating evidence relating to the calibration, recalibration, accuracy, and/or certification of DataMaster DMT evidential breath alcohol testing instruments ("DataMaster DMTs") used by the State of Michigan to determine the blood alcohol concentration ("BAC") of people suspected of operating a motor vehicle while intoxicated ("OWI") in violation of Mich. Stat.§ 257.625; relying on this falsified evidence to initiate criminal prosecutions against Plaintiff; failing to disclose this exculpatory evidence during the pendency of Plaintiff's OWI prosecution; presenting this falsified evidence to Michigan courts and using it to obtain a guilty plea agreement with the Plaintiff; and failing to train, supervise, oversee and/or discipline individuals assigned to coordinate alcohol testing and

6

recalibrate DataMaster DMTs in such a manner that would prevent
these egregious constitutional violations.

ECF No. 1, PageID.2.  He brings claims against all Defendants for fabrication of

evidence in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth

Amendments to the United States Constitution (Count I), withholding and

suppressing evidence of the faulty DataMaster DMTs in violation of § 1983 and the

Fourteenth Amendment (Count II), failing to intervene to stop the aforementioned

violations in violation of  § 1983 and the Fourteenth Amendment (Count III),

negligence (Count V), and fraud and misrepresentation (Count VI).  *Id.* at

PageID.12–18.  He also brings a claim against Defendants Gettel, Fondren, and

Intoximeters for failure to train and supervise in violation of § 1983 and the

Fourteenth Amendment (Count IV).  *Id.* at PageID.15–16.

Instead of answering the Complaint, Defendant Intoximeters filed the instant

Motion to Stay, ECF No. 14, which Defendants Gettel and Fondren joined, ECF No.

16.  Intoximeters asserts that the "Complaint filed here is nearly identical to the

complaint filed in the *Miller* action in this Court (Case No. 2:21-cv-10175-GAD-

KGA)."  ECF No. 14, PageID.66.  Specifically, the *Lech* Complaint "names identical

defendants and alleges identical causes of action on essentially identical facts."  *Id.*

at PageID.67.  Thus, if this action proceeds, Intoximeters contends the Defendants

"will file nearly identical motions to dismiss as they did in the Miller action.  And

given the identities between actions, this Court would presumably issue a similar order and judgment as it did in the *Miller* action, resulting in two more appeals to the Sixth Circuit." *Id.* at PageID.6970.

In opposition, Lech argues his circumstance is slightly different from that of the *Miller* plaintiff because he did not plead to his OWI charge and thus "faced two and a half years of uncertainty." ECF No. 19, PageID.136. Additionally, Lech asserts that the *Miller* plaintiff was allowed to engage in discovery and that he should be permitted to as well. *Id.* Lech also argues that he will be prejudiced by any delay in his case because he is 67 years old. *Id.* Finally, Lech avers that an Intoximeter employee was convicted of fraud regarding log certifications for the DataMaster DMTs, including the one used in Lech's prosecution. *Id.*

### 2. *Miller v. Gettel, et al*, 2:21-cv-10175-GAD-KGA

In *Miller*, this Court dismissed all the plaintiff's claims against Intoximeters because he had not plausibly pled that Intoximeters is a state actor (Counts I–IV), showed the existence of a duty of care apart from that arising from the Service Contract (Count V), or alleged a theory by which Intoximeters could be held responsible for the Doe technicians' actions (Count VI). 575 F. Supp. at 866, 869, 870. The Court also held that the MSP Defendants were not entitled to qualified immunity on the Fourth and Fourteenth Amendment claims at the motion to dismiss to stage. *Id.* at 861. Nevertheless, the Court dismissed the failure to train or

8

supervise claim (Count IV) because the plaintiff had not plausibly pled that specific actions by the defendants resulted in his constitutional violations and found that the plaintiff had forfeited the Fourth Amendment fabrication of evidence claim (Count I). *Id.* at 864. Likewise, the Court determined the MSP Defendants were not entitled to governmental immunity, *id.* at 865, but dismissed the fraud and misrepresentation claim (Count VI) because the plaintiff had not alleged that any of the defendants made a false representation or had a duty to disclose the failed DataMaster inspection, *id.* at 867.

The MSP Defendants appealed this Court's determination that they are not presently entitled to qualified immunity. *Miller v. Gettel*, No. 22-1034 (6th Cir.). Miller cross appealed the dismissal of several of his claims in the Court's interlocutory order, *Miller v. Gettel*, No. 22-1046 (6th Cir.), which the Court later certified as final, *Miller*, 2022 WL 2070384. The Court granted a stay of all proceedings pending the outcome of the appeals. *Miller v. Gettel*, No. 21-CV-10175, 2022 WL 2070385, at *4 (E.D. Mich. June 8, 2022). Arguments in both appeals were held on October 26, 2022.

### III.   LAW & ANALYSIS

#### A. Legal Standard

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, Southern Dist. of Ohio, Eastern Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). Here, the Court must determine whether it "should stay one case pending the appeal of a different, but similar, case." *Speight v. EquityExperts.org, LLC*, No. 17-13663, 2019 WL 1492207, at *1 (E.D. Mich. Apr. 4, 2019). In such situations, "[t]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* (quoting *Ohio Envtl. Council*, 565 F.2d at 396). Such a stay must have reasonable limitations. *Id.* (citing *Ohio Envtl. Council*, 565 F.2d at 396).

#### B. Discussion

The parties do not, and could not reasonably, dispute that the instant matter and *Miller* are "nearly identical." ECF No. 19, PageID.136. Given the commonality of facts, claims, and defendants between the matters, the Court concludes that a stay is proper and in the interest of judicial economy. Indeed, all the claims present in

10

the instant case are presently before the Sixth Circuit through either the MSP Defendants' appeal or Miller's cross appeal.  Thus, "a resolution of [the appeals] would greatly narrow the issues in this case."  *Speight*, 2019 WL 1492207, at *2.

Moreover, the Sixth Circuit held oral arguments in both appeals two months ago.  Therefore, opinions resolving the opinions are likely forthcoming and "[a] stay pending appeal would [] not result in great delay of this case."  *Id*.  In his response brief, Lech argues that he will somehow be prejudiced by the delay due to his age.  However, as the Plaintiff's Counsel conceded during the hearing, this is less of a concern now that oral arguments have concluded than it was when this Motion was briefed.  Given that Lech is healthy, the Court finds there is no reason, at this time, why he cannot wait the relatively short amount of time until the Sixth Circuit's opinions are issued.

Lech's concerns about discovery are similarly unavailing.  As a preliminary matter, Defense Counsel clarified at the hearing on the Motion that the *Miller* plaintiff had not engaged in discovery.  Indeed, Magistrate Judge Whalen ultimately denied Miller's Motion to Expedite Written Discovery, *Miller v. Gettel*, 2:21-cv-10175-GAD-KGA (E.D. Mich. Apr. 6, 2021), and this Court denied Miller's Motion to Compel after the defendants objected to responding to discovery requests during the pendency of the appeals and instead stayed the proceedings, *Miller v. Gettel*, 2022 WL 2070385, at *4.

11

Second, it is not clear how discovery would aid Lech under the circumstances. The opinion on appeal in *Miller* resolved the defendants' motions to dismiss and thus addressed the sufficiency of the plaintiff's claims as alleged in his complaint. As stated *supra*, Lech concedes that "the complaint filed here is nearly identical to the complaint filed in the *Miller* action" and that "the issues on appeal are similar to" those raised in his Complaint.  ECF No. 19, PageID.136.  Moreover, he admits that if his action proceeds, Defendants will file motions to dismiss that mirror the motions they filed in *Miller*.  *Id.* at 137.  Even if Lech obtains discovery, his Complaint will still be nearly identical to the *Miller* complaint, and Defendants will still file substantially similar motions to dismiss his Complaint to the ones they filed in *Miller*.  To the extent Lech intends to amend his Complaint based on what he learns in discovery, he would still be able to do so after the resolution of the appeals in *Miller* pursuant to Federal Rule of Civil Procedure 15.

Lech's assertions about the slight factual differences between him and Miller (the Intoximeter employee's fraud conviction and the fact that Lech did not plead guilty to OWI)[2] are similarly unpersuasive.  In fact, one of the Intoximeter employees had already pled guilty to fraud charges at the time the Court issued that

---

[2] The Court acknowledges that Defense Counsel indicated Intoximeters disputes the classification of Andrew Clark as an Intoximeters employee and will address such arguments if and when they are formally presented to the Court.

decision, so Lech's situation is not as factually distinct as he proposes.  More importantly, neither of these facts would alter the Court's analysis from its opinion in *Miller*.  The Court dismissed Intoximeters in that case because the plaintiff had not plausibly pled that Intoximeters is a state actor, that Intoximeters owed a duty of care that did not arise from the Service Contract, or that Intoximeters was liable for the actions of the Doe technicians under a *respondeat superior* theory.  That analysis does not change just because yet another Intoximeter employee was convicted of fraud.  Likewise, the fact that Lech did not plead guilty to the OWI charge has no bearing on the sufficiency of the claims alleged in his Complaint.  If at all, it would be relevant when calculating his damages, if he is entitled to them.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant Intoximeters' Motion to Stay (ECF No. 14) is **GRANTED**. Defendant Intoximeters is **ORDERED** to file a notice with this Court within **thirty (30) days** of the Sixth Circuit's decisions in *Miller v. Gettel*, Nos. 22-1034 and 22-1046.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending resolution of the cross appeals currently before the Sixth Circuit.  The Clerk of Court is

**DIRECTED** to administratively close the case until Defendant Intoximeters files

the notice of resolution of the appeals.

**IT IS SO ORDERED**.

/s/ Gershwin Drain_____

GERSHWIN A. DRAIN

UNITED STATES DISTRICT JUDGE

Dated:  December 21, 2022

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 21, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

14